MIN: [REDACTED]    Loan Number: [REDACTED]

# NOTE

FHA Case No. [REDACTED]

DECEMBER 2, 2008    NEW YORK    NEW YORK
[Date]    [City]    [State]

56 WADE STREET, JERSEY CITY, NEW JERSEY 07305
[Property Address]

## 1. PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means PREMIUM CAPITAL FUNDING, LLC D/B/A TOPDOT MORTGAGE, A NEW YORK LIMITED LIABILITY COMPANY and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of THREE HUNDRED FORTY-SEVEN THOUSAND EIGHT HUNDRED SIX AND 00/100 Dollars (U.S. $ 347,806.00), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of SIX AND 000/1000 percent ( 6.000 %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT
(A) Time
Borrower shall make a payment of principal and interest to Lender on the 1st day of each month beginning on FEBRUARY 1, 2009. Any principal and interest remaining on the 1st day of JANUARY, 2039, will be due on that date, which is called the "maturity date."

(B) Place
Payment shall be made at P.O. BOX 9103, UNIONDALE, NEW YORK 11555-9103, or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount
Each monthly payment of principal and interest will be in the amount of U.S. $ 2,085.27. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for Payment Adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.

Borrower Initials: _MM · MM_

NEW JERSEY - FHA FIXED RATE NOTE
NJFHA.NTE 08/01/08    Page 1 of 3    DocMagic eForms 800-649-1362 www.docmagic.com

[REDACTED]

(Check applicable box.)
☐ Growing Equity Allonge
☐ Graduated Payment Allonge
☐ Other [specify]:

### 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

### 6. BORROWER'S FAILURE TO PAY

(A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000 percent ( 4.000 %) of the overdue amount of each payment.

(B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

### 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

### 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

Borrower Initials: _MM_ _M_ _MM_ _____ _____ _____

NEW JERSEY - FHA FIXED RATE NOTE
NJFHA.NTE 06/01/08

Page 2 of 3

DocMagic eForms 800-649-1362
www.docmagic.com

REDACTED

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____(Seal)  _____(Seal)
MINNIE L. MILTEER      -Borrower   MORRIS MILTEER        -Borrower

_____(Seal)  _____(Seal)
                       -Borrower                          -Borrower

_____(Seal)  _____(Seal)
                       -Borrower                          -Borrower

[Sign Original Only]

NEW JERSEY - FHA FIXED RATE NOTE
NJFHA.NTE 05/01/06                    Page 3 of 3              DocMagic eForms 800-649-1362
                                                               www.docmagic.com

REDACTED

 

Loan Number: REDACTED

## ALLONGE TO PROMISSORY NOTE

Without recourse pay to the order of:   Countrywide Bank, FSB

By: _____

Name: JOSEPH MANSI

Title: DIRECTOR OF OPERATIONS

Company: PREMIUM CAPITAL FUNDING, LLC D/B/A TOPDOT MORTGAGE, A NEW YORK LIMITED LIABILITY COMPANY
125 JERICHO TURNPIKE, SUITE 500
JERICHO, NEW YORK 11753

Borrower Name: MINNIE L. MILTEER, MORRIS MILTEER

Property Address: 56 WADE STREET
JERSEY CITY, NEW JERSEY 07305

Loan Amount: $ 347,806.00

Closing Date: DECEMBER 2, 2008

PAY TO THE ORDER OF

WITHOUT RECOURSE
BANK OF AMERICA, N.A.

BY _____
MICHELE SJOLANDER
SENIOR VICE PRESIDENT

PAY TO THE ORDER OF
BANK OF AMERICA, N.A.
WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB

BY _____
LAURIE MEDER
SENIOR VICE PRESIDENT

ALLONGE TO PROMISSORY NOTE
08/08/03

DocMagic eForms 800-649-1362
www.docmagic.com

REDACTED

Hudson County Register 20081216060026090 Bk:17234 Pg:403 1/10

REDACTED

REDACTED

After Recording Return To:
PREMIUM CAPITAL FUNDING, LLC D/B/A TOPDOT MORTGAGE
125 JERICHO TURNPIKE, SUITE 500
JERICHO, NEW YORK 11753
Loan Number: REDACTED

This Instrument Prepared By:

———————————— [Space Above This Line For Recording Data] ————————————

# MORTGAGE

FHA CASE NO REDACTED

MIN: REDACTED

THIS MORTGAGE ("Security Instrument") is given on DECEMBER 2, 2008
The mortgagor is MINNIE L. MILTEER, SINGLE AND MORRIS MILTEER, SINGLE
56 WADE STREET, Jersey City, NJ 07305
("Borrower").
This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of Delaware, and has a mailing address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.   PREMIUM CAPITAL FUNDING, LLC D/B/A TOPDOT
MORTGAGE, A NEW YORK LIMITED LIABILITY COMPANY       ("Lender")
is organized and existing under the laws of  NEW YORK
and has a principal office and mailing address of  125 JERICHO TURNPIKE, SUITE 500,
JERICHO, NEW YORK 11753
Borrower owes Lender the principal sum of  THREE HUNDRED FORTY-SEVEN THOUSAND
EIGHT HUNDRED SIX AND 00/100         Dollars (U.S. $ 347,806.00         ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on  JANUARY 1, 2039 .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. This Security Instrument and the Note secured hereby are subject to modification (including changes in the interest rate, the due date, and other terms and conditions), as defined in New Jersey Laws 1985, ch. 353, § 1 et seq., and upon such modification, shall have the benefit of the lien priority provisions of that law. The maximum principal amount secured by this Security Instrument is $ 347,806.00         . For these purposes, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in  HUDSON                                           County, New Jersey:

Borrower Initials: _MM_ _MM_

FHA NEW JERSEY MORTGAGE - MERS
6/96                                             Page 1 of 8                                 DocMagic eForms 800-649-1362
                                                                                             www.docmagic.com

REDACTED

Block 1348    Lot 19

Hudson County Register 200812160600260090 2/10

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".

which has the address of      56 WADE STREET
                                 [Street]
      JERSEY CITY         , New Jersey    07305      ("Property Address"):
         [City]                                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or cancelling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
2. Monthly Payment of Taxes, Insurance, and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

Borrower Initials: M M M M

FHA NEW JERSEY MORTGAGE - MERS                Page 2 of 8                    DocMagic eForms 800-649-1362
6/96                                                                                          www.docmagic.com

REDACTED

Hudson County Register 20081216060026090 3/10

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. Application of Payments. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:
FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;
SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;
THIRD, to interest due under the Note;
FOURTH, to amortization of the principal of the Note; and
FIFTH, to late charges due under the Note.

4. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless the Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a

Borrower Initials: MM NM

FHA NEW JERSEY MORTGAGE - MERS
6/96

Page 3 of 8

DocMagic eForms 800-649-1362
www.docmagic.com

REDACTED

Hudson County Register 20081216060026090 4/10

leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**
   (a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
      (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
      (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.
   (b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:
      (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and
      (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.
   (c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

Borrower Initials: M M  M M

FHA NEW JERSEY MORTGAGE - MERS
6/96

Page 4 of 8

DocMagic eForms 800-649-1362
www.docmagic.com

REDACTED

Hudson County Register 20081216060026090 5/10

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 DAYS from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 DAYS from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. Borrower Not Released; Forbearance by Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. Governing Law; Severability. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

Borrower Initials: _MM_ _MM_ _MM_

FHA NEW JERSEY MORTGAGE - MERS
6/04
Page 5 of 8
DocMagic eForms 800-649-1362
www.docmagic.com

REDACTED

Hudson County Register 20081216060026090 6/10

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding, and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

If the Lender's interest in this Security Instrument is held by the Secretary, and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentences shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

20. **No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

Borrower Initials: _MM MM_

FHA NEW JERSEY MORTGAGE - MERS
6/96                      Page 6 of 8          DocMagic eForms 800-649-1362
                                               www.docmagic.com

REDACTED

21. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)].

☐ Condominium Rider   ☐ Graduated Payment Rider   ☐ Growing Equity Rider
☐ Planned Unit Development Rider   ☐ Adjustable Rate Rider   ☐ Rehabilitation Loan Rider
☐ Non-Owner Occupancy Rider   ☐ Other [Specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 8 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
MINNIE L. MILTEER  -Borrower              MORRIS MILTEER  -Borrower

_____ (Seal)          _____ (Seal)
                    -Borrower                                  -Borrower

_____ (Seal)          _____ (Seal)
                    -Borrower                                  -Borrower

Signed, sealed and delivered in the presence of:

_____

FHA NEW JERSEY MORTGAGE - MERS          Page 7 of 8          DocMagic eForms 800-649-1362
6/06                                                          www.docmagic.com

REDACTED

Hudson County Register 200812160600260908/10

———————————— [Space Below This Line For Acknowledgment] ————————————

State of New Jersey,
County of __Hudson__, ss
I CERTIFY that on __Dec. 2, 2008__ MINNIE L. MILTEER AND
MORRIS MILTEER

personally came before me and stated to my satisfaction that this person (or if more than one, each person):
(a) was the maker of the attached instrument; and
(b) executed this instrument as his or her own act.

_____ 12/2/08
Notary's Signature                Date

__Deborah Benjamin__
Notary's printed or typed name

My commission expires: __Mar. 5, 2013__

DEBORAH BENJAMIN
Notary Public
State of New Jersey
My Commission Expires Mar 5, 2013

FHA NEW JERSEY MORTGAGE - MERS    Page 8 of 8    DocMagic eForms 800-649-1362
8/98                                              www.docmagic.com

REDACTED

Hudson County Register 200812160060026090 9/10

Loan Number: REDACTED

Date: DECEMBER 2, 2008

Property Address: 56 WADE STREET, JERSEY CITY, NEW JERSEY 07305

EXHIBIT "A"

LEGAL DESCRIPTION

A.P.N. REDACTED

www.docmagic.com

Hudson County Register 200812160600260090 10/10

Stewart Title Guaranty Company

Commitment Number: REDACTED

SCHEDULE C
PROPERTY DESCRIPTION

The land referred to in this Commitment is described as follows:

ALL that certain tract or parcel of land situated, lying, and being in the City of Jersey City, the County of Hudson, and the State of New Jersey, being more particularly described as follows:

BEGINNING at a point in the northeasterly line of Wade Street, distant therein 100.00 feet southeasterly along the same from its intersection with the southeasterly line of Rutgers Avenue; running thence

1. North 57 degrees 00 minutes East, 100.00 feet to a point; thence

2. South 33 degrees 00 minutes East, 32.00 feet to a point; thence

3. South 57 degrees 00 minutes West, 100.00 feet to a point in the northeasterly line of Wade Street; thence

4. North 33 degrees 00 minutes West, along said northeasterly line of Wade Street, 32.00 feet to the point and place of BEGINNING.

FOR INFORMATION ONLY:

BLOCK: 1348  LOT: 8.1B

Said premises is more commonly known as 56 Wade Street, Jersey City, New Jersey

ALTA Commitment
Schedule C

REDACTED

FILED
200812160600026093
12/16/2008  03:27:03 PM
MORTGAGES
NUMBER OF PAGES : 10
KSLOAN

REDACTED

REDACTED

20110516205016479 1/1
05/16/2011 10 44 59 AM ASSIGNMENT
Bk: 1195 Pg: 325
Willie L Flood
Hudson County, Register of Deeds
Receipt No 676228

This space for Recorder's use

REDACTED

Recording Requested By:
Bank of America
Prepared By:
Mary Ann Hierman
888-603-9011
450 E. Boundary St.
Chapin, SC 29036

When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

Property Address:
56 Wade St
Jersey City, NJ 07305-2906

REDACTED   MIN #: REDACTED   MERS Phone #: 888-679-6377

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is 3300 S.W. 34TH AVENUE, SUITE 101 OCALA, FL 34474 does hereby grant, sell, assign, transfer and convey unto BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP whose address is BAC CORP OWNED ASSET, SIMI VALLEY, CA 93065 all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

Original Lender: PREMIUM CAPITAL FUNDING, LLC D/B/A TOPDOT MORTGAGE, A NEW YORK LIMITED LIABILITY COMPANY
Borrower(s): MINNIE L. MILTEER, SINGLE AND MORRIS MILTEER, SINGLE
Date of Mortgage: 12/2/2008
Original Loan Amount: $347,806.00

Recorded in Hudson County, NJ on: 12/16/2008, book 17234, page 403 and Instrument number 20081216060026090

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on 6/1/11

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____
Jane Martorana, Assistant Secretary

State of California
County of Ventura

On 06/01/11 before me, Marcellus Ellis, Notary Public, personally appeared Jane Martorana, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person (s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____   (Seal)
Notary Public: Marcellus Ellis
My Commission Expires: 10/31/2013

MARCELLUS ELLIS
Commission # 1869881
Notary Public - California
Los Angeles County
My Comm. Expires Oct 31, 2013

## ASSISTANT SECRETARY CERTIFICATE

## OF

## BANK OF AMERICA, NATIONAL ASSOCIATION

The undersigned, Devra Lindgren, an Assistant Secretary of Bank of America, National Association (the "Association"), a national banking association organized and existing under the laws of the United States of America and having its principal place of business in the City of Charlotte, County of Mecklenburg, State of North Carolina, does hereby certify that:

1. **Countrywide Document Custody Services was a division of Treasury Bank, National Association.**

   Effective September 6, 2005, Treasury Bank, National Association changed its name to Countrywide Bank, National Association.

   Effective March 12, 2007, Countrywide Bank, National Association converted to a federal savings bank under the title of Countrywide Bank, FSB.

   Effective April 27, 2009, Countrywide Bank, FSB converted back to a national banking association under the title of Countrywide Bank, National Association, and immediately thereafter, merged with and into Bank of America, National Association.

2. **Effective April 27, 2009, Countrywide Home Loans Servicing LP changed its name to BAC Home Loans Servicing, LP.**

   Effective July 1, 2011, BAC Home Loans Servicing, LP merged with and into Bank of America, National Association.

IN WITNESS WHEREOF, I have hereupon set my hand and affixed the seal of said Association this 23rd day of May, 2012.

[SEAL]

_____
Devra Lindgren
Assistant Secretary

Corporations Section  
P.O. Box 13697  
Austin, Texas 78711-3697



Hope Andrade  
Secretary of State

## Office of the Secretary of State

### CERTIFICATE OF MERGER

The undersigned, as Secretary of State of Texas, hereby certifies that a filing instrument merging

BAC Home Loans Servicing, LP  
Domestic Limited Partnership (LP)  
[File Number 131869l0]

Into

Bank of America, National Association  
Other Entity/Organization  
USA  
[Entity not of Record, Filing Number Not Available]

has been received in this office and has been found to conform to law

Accordingly, the undersigned, as Secretary of State, and by the virtue of the authority vested in the secretary by law, hereby issues this certificate evidencing the acceptance and filing of the merger on the date shown below

Dated: 06/28/2011

Effective: 07/01/2011

Hope Andrade  
Secretary of State

Phone: (512) 463-5555  
Prepared by: Jean Murchison

Come visit us on the internet at http://www.sos.state.tx.us/  
Fax: (512) 463-5709  
TID: 10343

Dial: 7-1-1 for Relay Services  
Document: 374034630003